# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

---

**ELIZABETH SCHOOL DISTRICT,**

          Defendant - Appellant,

v.

**KRISTEN CROOKSHANKS, as parent and next of friend of a minor on behalf of C.C.; MINDY SMITH, as parent and next friend of a minor on behalf of E.S.; NAACP-COLORADO-MONTANA-WYOMING STATE AREA CONFERENCES; and THE AUTHORS GUILD**

          Plaintiffs - Appellees.

No. 25-1105

(D.C. No. 1:20-cv-03512-CNS-STV)
(D. Colo.)

---

## APPELLEES' RESPONSE TO APPELLANT'S RENEWED EMERGENCY MOTION FOR ADMINISTRATIVE STAY AND STAY PENDING APPEAL

The Court should deny Defendant-Appellant Elizabeth School District's

("ESD") emergency motion because ESD cannot meet its heavy burden of

establishing the four elements for a stay of the preliminary injunction and because

there is no compelling reason to stay the proceedings below. ESD should not be

permitted to continue abridging Plaintiffs' federal and state constitutional rights

during the pendency of ESD's appeal when all that is required is simply placing

the books at issue (the "Removed Books") back on the shelves.

First, ESD's position is contrary to applicable First Amendment authority. ESD's book ban is not government speech; it is not school-sponsored speech; nor is it reasonably related to legitimate pedagogical concerns. As the District Court correctly found, Plaintiffs are likely to prevail in showing ESD removed the books to further its partisan viewpoints and because it disagreed with the views expressed in the books, in violation of both the federal and Colorado Constitutions. Having made the requisite showing, Plaintiffs are entitled to move forward with discovery and a trial on the merits while ESD remains enjoined from violating their constitutional rights.

Second, ESD cannot show irreparable harm. ESD suffers no irreparable harm by having to reshelve the books. And its claim that the preliminary injunction constitutes an irreparable "intrusion" is baseless. The inability to remove additional books based on political ideology is not an "intrusion"—it's the law. Indeed, it is Plaintiffs, not ESD, who suffer irreparable harm to their federal and state constitutional rights. The preliminary injunction should not be stayed.

The Court should also deny ESD's new request for a stay of all proceedings below—a request it never made to the District Court—because it is unwarranted in light of Plaintiffs' claims and their likelihood of prevailing on the merits.

## BACKGROUND

As the District Court explained, "the key underlying facts here are not bitterly contested." (Appellant's Addendum ("Add.") at 648.) The ESD Board voted to remove 19 books from school library shelves. ESD's motivation for removing these books was set out in emails, public statements, campaign promises, and Board meetings. While the District Court's order lays out the facts in detail, Plaintiffs provide a short synopsis here.

## I.    ELIZABETH ELECTS A CONSERVATIVE SCHOOL BOARD.

ESD is no stranger to the recent culture wars embroiling public education. Even before the book ban at issue here, members of the ESD Board of Education (the "Board") fanned controversy on issues like Critical Race Theory and the so-called "LGBTQ agendas" in ESD. (Add. 009.) In 2023, after a majority of the Board resigned in protest, Elizabeth elected a slate of board members who campaigned on what they claimed were "conservative values." (*Id.*) The book ban followed.

## II.    THE BOARD REMOVES BOOKS FROM SCHOOL LIBRARIES.

As some on the national stage turned toward banning books, so too did ESD. On August 12, 2024, the Board adopted Policy 9.7, directing a committee to develop a list of books in libraries that contain so-called "sensitive" topics. (Add. 122). According to Policy 9.7, "special attention" should be given to books that

contain "racism/discrimination," "religious viewpoints," "sexual content," "graphic violence," "profanity/obscenity," "drug or excessive alcohol use," or "ideations of self-harm or mental illness." (Add. 124.) Instead of undertaking a systematic review of the ESD library collection, which spans tens of thousands of titles, the committee reviewed "lists of frequently challenged books" and other unidentified sources. (Add. 274.) The committee also relied on BookLooks.org—a widely-discredited website—to inform its recommendations.[1] (*See id.*)

The Board determined that 19 books the committee identified should be removed from school libraries (the "Removed Books"), even though many had been on shelves for more than a decade without issue. (Add. 244.) On September 9, 2024, the Board voted to permanently remove the titles. (Add. 363.) The Board Members' contemporaneous statements and emails reveal why: the Board sought to imbue its own brand of conservative politics in Elizabeth schools, and these

---

[1] Booklooks was created by a member of Moms for Liberty. *See From Book Rating to Book Bans: A Critical Content Analysis of BookLooks.org's Report Cards on LGBTQIA+ Titles*, 8 J. Intell. Freedom & Privacy 17 (Am. Libr. Ass'n 2023), https://journals.ala.org/index.php/jifp/article/view/8142; Will Carless, et. al, *What's behind the national surge in book bans? A low-tech website tied to Moms for Liberty*, USA Today (Oct. 11, 2023), https://www.usatoday.com/story/news/investigations/2023/10/05/website-driving-banned-books-surge-moms-for-liberty/70922213007/. BookLooks recently ceased operations, noting "after much prayer and reflection it has become apparent that His work for us here is complete and that He has other callings for us. . . ." *See* www.booklooks.org.

books did not fit into this ideology. Numerous examples were cited in Plaintiffs' briefing to the District Court. (*See, e.g.*, Add. 135 ("conservative values are exactly what we are and plan to continue to bring into the district"); Add. 144 ("LGBTQ is only regarding sexual preference which doesn't belong in any school.").)

ESD does not dispute the authenticity of these statements. Instead, it argues that Board Members did not mean what they said. The District Court did not accept—and was not obligated to accept—ESD's post-hoc explanations in deciding the preliminary injunction.

## III.  THE DISTRICT COURT GRANTS A PRELIMINARY INJUNCTION.

On March 19, 2025, the District Court granted Plaintiffs' motion for preliminary injunction, ordered the books returned to the shelves by March 25, and denied ESD's motion to exclude Plaintiffs' evidence in support of their motion.

ESD appealed and, on March 21, also moved in the District Court to stay the injunction (but did not move to stay the case). (Add. 682.)[2] The District Court denied ESD's motion, finding that "all four factors weigh against [ESD]'s

_____

[2] ESD argued, *inter alia*, that it could not comply with the injunction because it had discarded the Removed Books and later accepted copies of the books on the purported condition that they be made available only to Plaintiffs. (Add. 685 n.2.) To facilitate compliance with the District Court's order, Plaintiffs provided copies of all of the Removed Books to ESD on March 25. (Add. 722, 724.) The Board held a special meeting and purported to "reject" all but one of the books. (Add. 744, 766.) The Removed Books remain available to ESD free of charge. (Appellees' Supplemental Addendum ("Supp. Add.") at 001.)

requested stay." (Add. 768.) It ordered the Removed Books be returned to library shelves by April 5. (*Id.*) On April 4, this Court granted a temporary stay "only to the extent the order requires appellant to reshelve the removed books by April 5, 2025," until further order. (ECF No. 31 at 2.)

## LEGAL STANDARD

In determining whether to stay a preliminary injunction pending appeal, this Court considers: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009). The first two factors "are the most critical." *Id.* "[M]ore than a mere possibility" of success on the merits and irreparable injury is required. *Id.* at 434–35 (internal quotations omitted). A "stay is not a matter of right, even if irreparable injury might otherwise result." *Id.* at 433. ESD bears the burden of showing that such a stay is warranted under the circumstances.

## ARGUMENT

The Court should not stay the District Court's order, and it should allow the preliminary injunction to proceed pending appeal. All four factors weigh against a stay. In addition, the Court should deny ESD's new request to stay further

proceedings in the District Court, as that court retains jurisdiction and there is no good reason why the case should not proceed on the merits.

## I.    ESD HAS NOT MADE A STRONG SHOWING IT'S LIKELY TO SUCCEED ON APPEAL.

ESD mostly repeats here the arguments it made to the District Court, insisting that its arguments alone constitute a strong showing that it will prevail on appeal. ESD is incorrect.

### A.    The District Court's Process Was Not An Abuse of Discretion.

The District Court correctly followed Circuit authority in determining that it need not hold an evidentiary hearing or strictly apply the Rules of Evidence to rule on Plaintiffs' motion for a preliminary injunction. (Add. 646–49.) Without acknowledging Circuit precedent and without a single citation to case law, ESD argues that the District Court's procedure was "prejudicial" and reversible error. ESD is wrong.

District courts have broad discretion in determining whether to hold a hearing on a motion for preliminary injunction. *See, e.g.*, *Carbajal v. Warner*, 561 F. App'x 759, 764 (10th Cir. 2014). And since "[t]he Federal Rules of Evidence do not apply to preliminary injunction hearings," *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003), ESD's claims of "inadmissible" evidence are incorrect. At the preliminary injunction stage, concerns regarding admissibility of evidence go to its weight. *Heartland Animal Clinic, P.A. v. Heartland SPCA*

7

*Animal Med. Ctr., LLC*, 503 F. App'x. 616, 620 (10th Cir. Nov. 28, 2012) (explaining "challenges to the admissibility of [evidence] are inappropriate at this stage in the proceedings"). Additionally, the District Court relied on ESD's own statements, which would be admissible regardless. (*See* Add. 644–45, 666.) While ESD accuses the District Court of ignoring its Board Members' post-hoc, litigation-driven statements, the District Court thoroughly considered all of the evidence submitted and decided to place more weight on the Board Members' statements at the time they made their decision. (Add. 666.)

> **B.** **The Government Speech Doctrine is Inapplicable Here.**

No court has agreed with the theory that library curation decisions are government speech. In fact, every court to have addressed this issue has found the opposite. *See GLBT Youth in Iowa Sch. Task Force v. Reynolds*, 114 F.4th 660, 667 (8th Cir. 2024) ("[T]he placement and removal of books in public school libraries" is not government speech.); *PEN Am. Ctr., Inc. v. Escambia Cnty. Sch. Bd.*, 711 F. Supp. 3d 1325, 1331 (N.D. Fla. 2024) (school library not viewed "as the government's endorsement of the views expressed in the books"); *Virden v. Crawford Cnty.*, Ark. No. 2:23-CV-2071, 2024 WL 4360495, at *5 (W.D. Ark. Sept. 30, 2024) (unpublished) (same). Indeed, "if placing these books on the shelf of public school libraries constitutes government speech, the State is babbling

prodigiously and incoherently." *GLBT Youth in Iowa Sch. Task Force*, 114 F.4th at 668 (internal quotations omitted).

Moreover, the Supreme Court has explicitly warned against expanding the government speech doctrine given that "it is a doctrine that is susceptible to dangerous misuse." *Matal v. Tam*, 582 U.S. 218, 235 (2017) ("[W]e must exercise great caution before extending our government-speech precedents."). ESD's application of *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024)—a case that does not address government speech—also cannot establish a strong showing that its government speech argument would be successful. *Moody* addresses states' power to regulate private social media platforms' editorial choices. In explaining that "[a]n entity exercise[ing] editorial discretion in the selection and presentation of content is engaged in speech activity," the Supreme Court found that a "State may not interfere with private actors' speech to advance its own vision of ideological balance." *Id.* at 741. The *Moody* Court says nothing about whether library curation decisions by a public school district constitute government speech, and instead reinforces Plaintiffs' position that "a fundamental aim of the First Amendment" is "preventing the government from tilting public debate in a preferred direction." *Id.* In sum, ESD has not made a strong showing that the District Court here—as well as all the other courts to have addressed the issue—is wrong.

**C.      The District Court Properly Found That ESD Cannot Prevail Under the *Hazelwood* Standard.**

ESD maintains that *Hazelwood School District v. Kuhlmeier,* 484 U.S. 260 (1988), bars Plaintiffs' claims. It does not. As the District Court carefully explained, *Hazelwood* applies only to restrictions on *curricular* speech—not to the removal of books from school libraries—and ESD could not satisfy *Hazelwood*'s test even if it did apply.

*Hazelwood* involved the distinction between speech that a school "tolerate[s]" and "speech that may fairly be characterized as part of the school curriculum." *Id*. at 271. The Supreme Court held that any restrictions on curricular speech must be "reasonably related to legitimate pedagogical concerns." *Id.* at 273. Here, ESD's decision to remove books from school libraries "concerns a non-curricular matter" making *Hazelwood* inapplicable. *See Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.*, 895 F. Supp. 1463, 1469 (D. Kan. 1995) (declining to apply *Hazelwood* where book was removed from school library because *Hazelwood* "was a curriculum case").

Moreover, even if *Hazelwood* applied, ESD cannot meet its standard. "The imprimatur concept covers speech that is so closely connected to the school that it appears the school is somehow sponsoring the speech." *Fleming v. Jefferson Cnty. Sch. Dist. R-1*, 298 F.3d 918, 925 (10th Cir. 2002). As the District Court explained, "no reasonable person would assume that the District is sponsoring the speech or

the views contained in the Removed Books." (Add. 668); *see also PEN Am. Ctr., Inc.*, 711 F. Supp. 3d at 1331 ("[T]he Court simply fails to see how any reasonable person would view the contents of the school library (or any library for that matter) as the government's endorsement of the views expressed in the books on the library's shelves.").

Finally, the Board Members' contemporaneous statements about the Removed Books show that their decisions were not "reasonably related to legitimate pedagogical concerns." *Hazelwood*, 484 U.S. at 273. While ESD attempts to walk back the statements by pointing to litigation declarations insisting the books were removed due to age-inappropriateness, the Board Members' emails explicitly state otherwise. In another effort to explain away these emails and their references to injecting "conservative values" into Elizabeth schools, ESD argues that "'conservative values' in America ordinarily means belief in moral order" which "is not partisan." (Motion at 11.) This misses the point. ESD lawyers' definition of "conservative values" does not matter. What matters is that the Board Members' particular "conservative" viewpoint was their motivation for removing the books from school libraries, not legitimate pedagogical concerns. Viewpoint discrimination is not permitted no matter the viewpoint. The First Amendment prohibits the government from prescribing what it deems to be orthodox or "moral order." *See W. Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943)

("If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion.").[3]

ESD has not shown that its library curation decisions are curricular speech under the purview of *Hazelwood*, or that the removal of the books was based on any legitimate pedagogical concern. Thus, ESD has not made a strong showing that it will succeed on this argument.

**D.    ESD's Argument Regarding the Colorado Constitution is Waived and Erroneous.**

Plaintiffs brought claims under both the U.S. and Colorado Constitutions. ESD argued in its motion to stay below that Article II, Section 10 of Colorado's Constitution does not confer a private right of action. Because ESD did not raise this argument in response to Plaintiffs' motion for preliminary injunction, it was waived. *See Little v. Budd Co*., 955 F.3d 816, 821 (10th Cir. 2020) ("[A]bsent

---

[3] ESD cherry picks passages from three of the Removed Books in an effort to sensationalize their arguments and re-write their motivations for removing the books. (Motion at 1.) Notably, its Motion says nothing about books like *You Should See Me in a Crown*, *#Pride: Championing LGBTQ Rights, or It's Your World—If You Don't Like It, Change It*—none of which contain any sexually explicit content. (*See e.g.*, Add. 145 ("There isn't anything graphic other than discussing a kiss that I saw.").) At the preliminary injunction stage, the District Court refused to credit the District's litigation-inspired attempts to recharacterize its motivations. ESD will have an opportunity to persuade a jury or the District Court otherwise upon a full evidentiary record at trial.

extraordinary circumstances, arguments raised for the first time on appeal are waived."). ESD fails to address the District Court's finding of waiver.

Additionally, ESD is wrong in its argument. For claims seeking declaratory or injunctive relief, Colorado allows for a private right of action under the Colorado Constitution. *See Bock v. Westminster Mall Co.*, 819 P.2d 55, 56 (Colo. 1991) (recognizing private right of action under Article II, Section 10 of the Colorado Constitution for declaratory and injunctive relief). ESD relies on *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 81 F. Supp. 2d 1090 (D. Colo. 2000), but the claim there was dismissed because it was not requesting the type of declaratory or injunctive relief requested in *Bock*. *See id.* at 1098.

Finally, the viability of Plaintiffs' claims under the Colorado Constitution is divorced from the Court's interpretation and application of federal law to Plaintiffs' federal claims.

### E. The District Court Correctly Found the Author Plaintiffs' First Amendment Rights Were Likely Violated.

The Author Plaintiffs have a First Amendment right to share their books free from viewpoint discrimination. *See Martin v. City of Struthers, Ohio*, 319 U.S. 141, 143 (1943) (The First Amendment "embraces the right to distribute literature."); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 64 (1963). Nonetheless, ESD contends that the Authors have no right to have their books in school libraries and that ESD's alleged rights control. This argument is based upon erroneous

applications of the government speech doctrine and *Hazelwood*, as noted above. It has also been rejected elsewhere. "Here, the 'speakers' are not students, but rather the authors and publishers of the books that are subject to removal." *Penguin Random House LLC v. Robbins*, No. 4:23-cv-00478-SHL-SBJ, ECF No. 113, at 15 (S.D. Iowa Mar. 25, 2025) (unpublished) (granting preliminary injunction in favor of the author plaintiffs).

As the District Court correctly ruled, Appellant is not permitted to *remove books* from its libraries based on an author's viewpoint, and the removals made here were expressly viewpoint-based.

## II.    ESD WILL SUFFER NO IRREPARABLE HARM ABSENT A STAY.

ESD's claims of irreparable harm are unavailing. Irreparable harm requires the alleged injuries be "both certain and great" and "not merely serious or substantial." *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001).

First, ESD manufactures an injury based on speculation and an overbroad reading of the District Court's order. In addition to ordering that the books be returned to the libraries, the District Court ordered that the District "is enjoined from removing additional books because ESD disagrees with the views expressed therein or merely to further their preferred political or religious orthodoxy." (Add. 681.) This is simply a restatement of Plaintiffs' constitutional protections under the

First Amendment. Enjoining ESD from making book removal decisions based on political ideology is not an "intrusion"—it is the law. *See Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 872 (1982) (explaining school districts "may not remove books from school library shelves simply because they dislike the ideas contained in those books and seek by their removal to prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion"); *Tinker v. Des Moines Indep. Comm. Sch. Dist.*, 393 U.S. 503, 509 (1969) (school districts may not restrict speech based on a "mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint").

Second, ESD states that it will be required to take two mandatory actions in the form of repurchasing and reshelving the Removed Books and by adopting new interim library policies. Not so. As the District Court clearly explained, the "requested injunction does not require the District to do something that it was not already doing during the uncontested period." (Add. 651.) ESD has copies of the Removed Books purportedly "loaned" to it by an undisclosed donor (Add. 701–02), and Plaintiffs provided ESD with a second set of books free of charge or restrictions. (Supp. Add. 001.) The contention that the mere reshelving of the Removed Books would cause irreparable harm is "absurd." (Add. 679.) And even if the District had not received either set of donated books, the minimal cost of the

Removed Books is purely monetary, and, by definition, reparable. *See Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1258 (10th Cir. 2003). Moreover, the Removed Books had been on library shelves for years prior to their removal—ten of the books had been on library shelves for over a decade. (Add. 244.) Appellant does not claim the books were causing irreparable harm then, nor could it.

Similarly, nothing in the District Court's order requires a new library policy. And even if it did, ESD fails to explain how the creation of constitutionally-compliant library curation policies will cause it irreparable harm. The District's lone citation in support of this argument is inapposite, as the Fifth Circuit held there that "altered business operations and missed opportunities" such as "abandoning plans to open a [business] location" or to consolidate locations, may constitute irreparable harm. *Career Colleges & Schs. of Texas v. U.S. Dep't Educ.*, 98 F.4th 220, 237 (5th Cir. 2024). The mere modification of existing library protocols of a school district presents no such harm.

Third, ESD argues that repurchasing and reshelving the Removed Books will cause irreparable harm "by changing the applicable First Amendment analysis" from a case about the removal of books to a case about compelling schools to purchase books. (Motion at 18.) But this is based on the false premise that ESD needs to purchase books to comply with the District Court order. It does

16

not. ESD was provided copies of the Removed Books for free and without restrictions on their use. (Add. 722.) And further, it defies logic that a school district could remove books in contravention of the First Amendment, but escape scrutiny by discarding them before a challenge can be filed.[4]

ESD's alleged irreparable harm to its legal rights is insufficient to satisfy its burden of showing "more than a mere possibility" of injury, *Nken*, 556 U.S. at 434–35, both "certain and great" absent a stay, *Prairie Band of Potawatomi Indians*, 253 F.3d at 1250.

## III.    A STAY WILL IRREPARABLY HARM PLAINTIFFS.

Where Plaintiffs' First Amendment rights are implicated, there is a presumption of irreparable injury. *Cmty. Commc'ns Co., Inc. v. City of Boulder, Colo.*, 660 F.2d 1370, 1376 (10th Cir. 1981). "[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Verlo v. Martinez*, 820 F.3d 1113, 1127 (10th Cir. 2016) (quoting *Elrod v. Burns,* 427 U.S. 347, 373 (1976)). Plaintiffs are injured both by the loss of access to the Removed Books in the school libraries, and by the stigma that ESD's actions have placed on the Removed Books and the ideas they contain. *See Counts v. Cedarville School District*, 295 F. Supp. 2d 996, 1002 (W.D. Ark. 2003) (holding

---

[4] Plaintiffs reject the District's suggestion that it had no obligation to preserve the Removed Books when it knew that litigation was likely.

that requiring parental permission to check out Harry Potter books violated students' First Amendment rights in part because "the stigmatizing effect of having to have parental permission to check out a book constitutes a restriction on access").

The fact that the Removed Books are supposedly available to Plaintiffs upon identification of their affiliation with this litigation or membership in the NAACP is further stigmatizing and harmful. Courts have long recognized that "compelled disclosure of affiliation with groups engaged in advocacy may constitute as effective a restraint on freedom of association" as other restrictions on expression. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958). As the District Court stated, ESD's "proposed remedy" to make available the Removed Books only to Plaintiffs is, in fact, "no remedy at all." (Add. 675.) The fact that the Removed Books exist via other sources is also not a remedy under the First Amendment. *See Pratt v. Ind. Sch. Dist. No. 831, Forest Lake, Minn.*, 670 F.2d 771, 779 (8th Cir. 1982) ("Restraint on protected speech generally cannot be justified by the fact that there may be other times, places or circumstances for such expression.").

Finally, the timing of Plaintiffs' filing of the lawsuit does not evidence a lack of harm. The parents and students involved had to weigh their constitutional rights against the consequences of disagreeing with ESD, which include public

shaming and humiliation. (Add. 12–13, 95, 101.) Any delay was due to the risks of retaliation—not lack of injury.

## IV.    THE PUBLIC INTEREST WEIGHS AGAINST A STAY.

"[A]s far as the public interest is concerned, it is axiomatic that the preservation of First Amendment rights serves everyone's best interest." *Local Org. Comm., Denver Chapter, Million Man March v. Cook*, 922 F. Supp. 1494, 1501 (D. Colo. 1996). Indeed, "[i]t is always in the public interest to prevent the violation of a party's constitutional rights." *Awad v. Ziriax*, 670 F.3d 1111, 1132 (10th Cir. 2012). The longer the Removed Books are kept off the shelves, the longer Plaintiffs and other students and authors will be denied their fundamental First Amendment rights.

## V.    THE COURT SHOULD NOT STAY FURTHER PROCEEDINGS IN THE DISTRICT COURT.

The granting of a stay of proceedings "ordinarily lies within the discretion of the district court." *Pet Milk Co. v. Ritter*, 323 F.2d 586, 588 (10th Cir. 1963); *see also Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 791 (10th Cir. 2013) ("[I]n an appeal from an order granting or denying a preliminary injunction, a district court may nevertheless proceed to determine the action on the merits."). ESD did not move to stay the proceedings below, depriving the District Court of its usual discretion. Regardless, a stay of District Court proceedings is not warranted here. ESD filed an answer to the complaint, not a motion to dismiss, so the case

will proceed in any event. ESD will not be harmed by the case moving forward. And because ESD waived its (erroneous) argument as to Plaintiffs' Colorado Constitutional claims, proceedings will inevitably continue as to at least some claims no matter the outcome of ESD's appeal. The longer ESD delays a trial on the merits, the longer Plaintiffs' constitutional rights hang in the balance.

As such, an expedited briefing schedule on appeal also is not warranted. ESD's interlocutory appeal may proceed in tandem with discovery in the District Court without prejudice to either party.

## CONCLUSION

ESD fails to meet its burden of making a strong showing that it is likely to succeed on the merits of its arguments on appeal and that it will suffer irreparable harm absent a stay of the preliminary injunction. Plaintiffs and the public interest will be harmed if the District Court's order is stayed. ESD's request for a stay of the preliminary injunction pending appeal and for a stay of further proceedings in the District Court should be denied.

**CERTIFICATE OF COMPLIANCE WITH RULES 27 AND 32(a)**

This response complies with the type-volume limitation set forth in Federal Rules of Appellate Procedure 27(d)(2)(A). It contains 4,504 words.

This response complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) and the type-style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using 14-point font.

Dated: April 14, 2025

*s/ Kendra M. Kumor*

Dated:  April 14, 2025.

| | |
|---|---|
| *s/ Timothy R. Macdonald* | *s/ Kendra M. Kumor* |
| Timothy R. Macdonald | Craig R. May |
| Sara R. Neel | Thomas C. Dec |
| American Civil Liberties Foundation | Celyn D. Whitt |
| of Colorado | Kendra M. Kumor |
| 303 E. 17th Avenue, Suite 350 | Wheeler Trigg O'Donnell LLP |
| Denver, CO 80203 | 370 Seventeenth Street, Suite 4500 |
| Telephone:  720.402.3107 | Denver, CO 80202 |
| Email:   tmacdonald@aclu-co.org | Telephone:  303.244.1800 |
|          sneel@aclu-co.org | Facsimile:  303.244.1879 |
| | Email:   may@wtotrial.com |
| |          dec@wtotrial.com |
| |          whitt@wtotrial.com |
| |          kumor@wtotrial.com |
| | |
| | Attorneys for Plaintiffs - Appellees |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system on April 14, 2025.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

- **Bryce D. Carlson**
  bryce@millerfarmercarlson.com

- **Thomas Carl Dec**
  dec@wtotrial.com

- **Julian R. Ellis, Jr**
  julian@first-fourteenth.com

- **Laura J. Ellis**
  laura@first-fourteenth.com

- **Michael Francisco**
  michael@first-fourteenth.com

- **Timothy R. Macdonald**
  tmacdonald@aclu-co.org

- **Craig Ruvel May**
  may@wtotrial.com

- **Jonathan F. Mitchell**
  jonathan@mitchell.law

- **Christopher Owen Murray**
  chris@first-fourteenth.com

- **Sara R. Neel**
  sneel@aclu-co.org, mbailey@aclu-co.org

- **Celyn D. Whitt**
  whitt@wtotrial.com

- **Kendra M. Kumor**
  kumor@wtotrial.com


*s/ Kendra M. Kumor*